NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 15-2589

——————————

UNITED STATES OF AMERICA

v.

SHAMARR J. PITTS
a/k/a Shamaar J. Pitts


Shamaar J. Pitts,
                    Appellant

——————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-13-cr-00403-001)
District Judge: Honorable Joel H. Slomsky

——————————

Submitted under Third Circuit LAR 34.1(a)
on April 29, 2016

Before:  MCKEE, Chief Judge, JORDAN and ROTH, Circuit Judges

(Filed: July 13, 2016)

——————————

OPINION*

——————————

ROTH, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Shamarr Pitts appeals his conviction and sentencing for the three criminal counts, assault on a federal agent,[1] using and carrying and brandishing a firearm during a crime of violence,[2] and being a convicted felon in possession of a firearm.[3]  For the reasons set forth below, we will affirm the judgments of conviction and sentence.

**I.**

Since we write primarily for the benefit of the parties, the facts of this matter are discussed only in an abbreviated fashion.  In May 2013, Pitts was wanted on two arrest warrants in connection with a shooting at a nightclub in West Philadelphia.  A car believed to have been used to escape after the shooting, a silver Pontiac Bonneville, was registered to Pitts's girlfriend.  After police searched the girl friend's residence and interviewed her, they learned that Pitts had been driving the Pontiac for at least two weeks prior to the shooting and was still in possession of the car.  An alert to "be on the lookout" for the Pontiac was issued to Philadelphia area law enforcement.

On June 4, 2013, Officer Mark Hudson of the Darby Police Department located the Pontiac outside a home in Lansdowne Borough, Pennsylvania.  Following consultation with Detective Patrick Smith, a Philadelphia Police Officer assigned to the FBI's Violent Crimes Task Force, officers from several jurisdictions forced entry into the home to execute the arrest warrants.  As the officers were conducting a protective sweep of the home, Detective Smith and two other officers ascended a set of stairs and pushed

---

[1] 18 U.S.C. § 111(a)(1), (b)(1).
[2] 18 U.S.C. § 924(c)(1).
[3] 18 U.S.C. § 922(g)(1).

2

open a bedroom door. Upon doing so, Smith saw Pitts standing in the bedroom, holding a gun. Pitts attempted to shoot Smith, but the gun failed to fire. Smith and the other officers retreated to the bottom of the stairs. After approximately two minutes of discussion, Pitts surrendered.

Subsequent to Pitts's surrender, Lansdowne Police obtained a search warrant for the house. The ensuing search turned up, in the bedroom in which Pitts had been located, a handgun, several rounds of ammunition, including an expended round at the base of the bedroom door, a loaded high-capacity magazine for an AK-47 assault rifle, and Pitts's wallet.

After his indictment, Pitts moved to suppress the fruits of the search warrant, claiming that officers did not have a reasonable basis to believe Pitts was in the residence. Although the search warrant for the Lansdowne residence did not mention a confidential informant, prosecutors revealed in their opposition to the motion to suppress that Detective Smith had received information from a relative of Pitts's girlfriend that Pitts often frequented the home in which he was found. Pitts moved to compel the disclosure of this informant's identity.

The District Court denied the motion to disclose and the motion to suppress and Pitts was convicted at trial on all counts. Pitts was sentenced to 180 months in prison, an upward departure from the guidelines range of 135-147 months, based on an offense level of 20 pursuant to U.S. Sentencing Guidelines § 2K2.1(a)(4). The offense level was determined based on Pitts' 2007 conviction for aggravated assault under Pennsylvania law, which the probation office considered a "crime of violence" for guidelines purposes.

3

**II.**[4]

Pitts alleges two errors by the District Court: (1) the District Court should have compelled disclosure of the identity of the confidential informant and (2) his aggravated assault conviction was not a "crime of violence" for the purposes of the Sentencing Guidelines. Neither argument is persuasive.

Police may generally keep a confidential informant's identity secret from a defendant unless "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."[5] The criminal defendant bears the burden of demonstrating the need for the disclosure.[6] An informant need not be disclosed for purposes of a probable cause determination if "there was sufficient evidence apart from" the informant's "confidential communication" to justify a warrantless search.[7]

Pitts argues that the informant's identity should have been disclosed because if, as Pitts believes, this confidential informant did not exist, the revelation of this information (1) would have cast doubt on whether police had probable cause to enter the Lansdowne

---

[4] The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231 and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We review a District Court's decision not to compel disclosure of a confidential informant for abuse of discretion. *United States v. Johnson*, 677 F.3d 138, 143 (3d Cir. 2012). We review the District Court's sentencing determination for plain error since Pitts did not object to the classification of his aggravated assault conviction as a crime of violence before the District Court. *United States v. Miller*, 594 F.3d 172, 183 n.6 (3d Cir. 2010).

[5] *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957); *Johnson*, 677 F.3d at 143.

[6] *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981).

[7] *Roviaro*, 353 U.S. at 61.

residence and (2) would have fatally wounded Detective Smith's credibility. We address each argument in turn.

The police had probable cause to enter the Lansdown residence to search for Pitts even without any of the information provided by the confidential informant. Pitts's girlfriend identified the Pontiac as being driven by Pitts. Police located the Pontiac parked in front of the Lansdowne residence. After discovering the car, law enforcement officers spent several minutes knocking on the house's door and announcing themselves as police. One of the officers saw movement on the second floor, confirming that someone was inside but unwilling to admit the officers or answer their knock.

When evaluating a probable cause determination for entry with an arrest warrant but without a search warrant, we employ a "common sense approach" and evaluate the totality of the circumstances.[8] The combination of factors here was sufficient to give an officer a reasonable belief that Pitts was inside.[9] The informant's statement specifically identifying the Lansdowne residence as one frequented by Pitts makes the belief even more reasonable but, absent the confidential informant's information, police would have had sufficient reason to enter.

The second portion of Pitts's objection, that disclosure of the informant could have brought Detective Smith's credibility into question at trial, is similarly unpersuasive. When a confidential informant's involvement in a case merely goes to probable cause for

---

[8] *United States v. Veal*, 453 F.3d 164, 168 (3d Cir. 2006).
[9] *See Veal*, 453 F.3d at 168–69.

a search, as is the case here, "disclosure of his identity is not required."[10]  As discussed above, the confidential informant's information here only went to the probable cause for the initial search.  The circumstances under which Pitts was charged arose after the police forced entrance into the Lansdowne residence.  Thus, the confidential informant, by definition, would not have had any relevant information about the crimes with which Pitts was charged.  The relevance, if any, of any testimony the confidential informant could have offered at trial would be limited.

Pitts's theory that Smith lied about the existence of the informant is based on certain inconsistencies between Smith's statements around the time of the arrest and those obtained during the process leading up to trial.  Mere speculation is an insufficient basis upon which a District Court may order disclosure of a confidential informant's identity.[11]  Moreover, Pitts's counsel could and did explore all of those inconsistencies with Smith and other government witnesses over the course of the trial.  To the extent that defense counsel had suspicions about the existence of the confidential informant, those suspicions were given full airing and ultimately found unpersuasive by the jury.  Consequently, the District Court did not abuse its discretion in declining to order the disclosure of the informant's identity prior to the suppression hearing or at trial.

The District Court also did not plainly err in determining that Pitts's previous conviction for aggravated assault is a crime of violence.  Pitts argues that, under *United*

---

[10] *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (en banc).
[11] *Id.*

*States v. Otero*,[12] this Court has held that simple assault in Pennsylvania is not a crime of violence for guidelines purposes. Pitts is correct, but Pitts was not convicted of simple assault; he was convicted of aggravated assault. Pitts contends that the only difference between a simple and aggravated assault is the status of the victim.[13] This is incorrect. *Otero* illustrates the significant difference between the two. Simple assault in Pennsylvania encompasses negligent or reckless behavior.[14] In contrast, a conviction under Pennsylvania's aggravated assault statute, involving assault on an officer of the state, requires intentional conduct.[15]

Pitts was convicted of "intentionally or knowingly caus[ing] bodily injury" to a state officer while that officer was performing his duty.[16] This fits comfortably within the Sentencing Guidelines definition of a violent crime as any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another".[17] Thus, the District Court did not err in holding that an aggravated assault conviction under § 2702(c) was a crime of violence for guidelines purposes.

## III.

For the foregoing reasons, we will affirm the judgments of conviction and of sentence of the District Court.

---

[12] 502 F.3d 331, 335 (3d Cir. 2007).
[13] *Compare* 18 Pa. C.S.A. § 2702(c) (aggravated assault) *with* 18 Pa. C.S.A. § 2701 (simple assault).
[14] *Otero*, 502 F.3d at 335.
[15] 18 Pa. C.S.A. § 2702(c).
[16] 18 Pa. C.S.A. § 2702(c).
[17] U.S.S.G. § 4B1.2.